## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| STEVEN MERRILL, | ) | |
| SARA MERRILL | ) | |
| | ) | |
|     PLAINTIFFS | ) | |
| vs. | ) | DOCKET NO. |
| | ) | |
| | ) | |
| FEDERAL HOME LOAN MORTGAGE | ) | |
| CORPORATION, | ) | |
| | ) | |
| BANK OF AMERICA, N.A. | ) | |
| | ) | |
|     DEFENDANTS | ) | |

## COMPLAINT

## REQUEST FOR JURY TRIAL

### I.    INTRODUCTION

This is an action for actual, compensatory, statutory and punitive damages brought by Steven and Sara Merrill, husband and wife and individual consumers, against Federal Home Loan Mortgage Corporation ("Freddie Mac") and Bank of America, N.A. ("BANA") for violations of the Bankruptcy Automatic Stay pursuant to 11 U.S.C. §362; Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*; the Maine Fair Debt Collection Practices Act, 32 M.R.S.A. §11001 *et seq.* (hereinafter collectively known as the ''FDCPA''), and the Maine Consumer Credit Code, 9-A M.R.S. §§9-403(F); which all prohibit abusive, deceptive, and unfair debt collection practices. The Plaintiffs also initiate this action to bring common law claims of Negligence, Negligent/Intentional Infliction of Emotional Distress, Fraud, and Negligent Misrepresentation.

### II.    JURISDICTION AND VENUE

1.  The jurisdiction of this Court is conferred by 28 U.S.C. §1331 and 28 U.S.C. §1367.

2.   Venue is proper as the Plaintiffs are residents of Cumberland County; all relevant events occurred in this District, and the Defendants were doing business in Maine during all relevant times.

### III.PARTIES

3.   Plaintiff Sara Merrill is a natural person and consumer residing in Parsonfield, Maine.

4.   Plaintiff Steven Merrill is a natural person and consumer residing in Parsonfield, Maine.

5.   Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") is a government-sponsored enterprise with a principal place of business in Tysons Corner, Virginia.

6.   Freddie Mac was at all relevant times and remains the owner/investor of the Merrills' loan at issue in this complaint.

7.    Defendant Bank of America, N.A. ("BANA"), is a national banking association organized under the laws of the United States, with its principal place of business in Charlotte, North Carolina.

8.   BANA, under the name of Bank of America Home Loans (hereinafter referred to as "BANA"), serviced and continues to service the Merrills' mortgage loan on their property at 42 Lost Mile Rd. Parsonfield, Maine during all times relevant to this Complaint.

9.   Upon information and belief, BANA took on the servicing of the Merrills' mortgage loan in 2010.

10. Upon information and belief, Freddie Mac hired BANA to service the Merrills' loan and authorized BANA to conduct transactions involved in the servicing of the Merrills' loan.

11. Freddie Mac was and remains the principal over its agent BANA regarding the servicing of the Merrills' loan.

12. Upon information and belief, the Merrills' mortgage loan was in default at the time BANA took on servicing of the loan.

13. BANA engages in the business of collecting debts in this state.

14. BANA regularly engages in the enforcement of security interests securing debts.

15. BANA collects debts using the mails and telephone, and BANA regularly attempts to collect debts alleged to be due to another.

16. BANA is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6), 32 M.R.S.A. §11002(6) and 11003(7)(C).

## IV.    FACTS

17.      On or around December 26, 2007, Mr. and Mrs. Merrill entered into a Mortgage and Note in the amount of $252,000.00 with Capital One Home Loans, LLC ("loan") on their home at 42 Lost Mile Rd. Parsonfield, Maine ("Property").

18. Mr. and Mrs. Merrill have lived in their home at 42 Lost Mile Road for over eight years. They have four young children.

19. On or about December 1, 2009, the Merrills fell behind on the mortgage.

20. In the fall of 2011, BANA induced the Merrills to attend an in-person seminar  where it promised to provide direct access to loss mitigation options and facilitate decisions on the those options.

21. The Merrills drove to and attended the BANA seminar on December 3, 2011 at Sable Oaks in South Portland Maine.

22. An agent of BANA the Merrills met at the seminar represented to the Merrills that they were "pre-approved" for a loan modification that would provide a more affordable payment and ultimately bring their loan current and cure the default.

23. BANA requested additional documents to facilitate a decision on their application for a loss mitigation option and the Merrills fully complied with BANA's requests for documents and information.

24. On or around December 15, 2011, despite the preapproval for a loan modification option, BANA served the Merrills with a foreclosure summons and complaint and commenced the foreclosure action in the Springvale District Court, Docket No. RE-11-252.

25. BANA was still processing the loan modification application at the time they filed the Foreclosure Complaint.

26. In January 2012, BANA offered the Merrills a "Trial Payment Plan" ("Plan") which they accepted.

27. The Plan required the Merrills to make three trial period payments before they would be offered a final permanent loan modification.

28. The Merrills made all payments as required under the Plan.

29. On April 4, 2012, BANA entered into a Consent Judgment with the United States as part of the National Mortgage Settlement filed in the U.S. District Court for the District of Columbia, Case No. 1:12-cv-00361 (found at

https://d9klfgibkcquc.cloudfront.net/Consent_Judgment_BoA-4-11-12.pdf.)

30. By letter dated May 8, 2012, BANA offered the Merrills a permanent Freddie Mac loan modification ("loan modification") with an effective date of June 1, 2012.  A true and accurate copy of the Loan Modification signed by the Merrills is attached hereto as Exhibit 1.

31. This was the first indication to the Merrills that Freddie Mac was involved with their loan.

32. The loan modification reduced the Merrills' monthly mortgage payment by approximately $700.

33. The Merrills both signed and returned the loan modification agreement timely to BANA and made each monthly payment as it came due.

34. BANA received the signed loan modification agreement on or around May 17, 2012.

35. BANA received and accepted the Merrills' monthly payments made after the loan modification was signed and delivered to BANA.

36. BANA did not seek to dismiss the foreclosure action after receipt of the executed loan modification agreement and payment thereon.

37. The Merrills received a scheduling order for the foreclosure action dated March 26, 2012.

38. BANA filed a Motion to Stay the Foreclosure which the court granted on June 26, 2012 and the court set a status conference for on October 29, 2012.

39. The Merrills attended the pre-trial conference on October 29, 2012, incurring travel costs and taking time off from work.  BANA failed to appear.

40. The court re-set the conference for January 11, 2013.

41. The Merrills appeared at the January 11, 2013 conference.  BANA did not.

42. The court dismissed the foreclosure case with prejudice on January 11, 2013.  Attached is a true and accurate copy of the court order dismissing the action with prejudice as Exhibit 2.

43. Despite receiving the Merrills' signed modification agreement and the payments by the Merrills consistent with the terms of that agreement,  BANA delivered monthly billing statements to the Merrills alleging increasing past due amounts of over $59,000.

44. BANA demanded the past due amounts based on the pre-modification terms of the loan. Attached as Exhibit 3 are true and accurate copies of fifteen of the monthly statements that BANA sent to the Merrills based on the pre- modification terms from July 30, 2012 to September 16, 2014.

45. When Mrs. Merrill contacted BANA to determine why they were getting such bills, BANA advised Mrs. Merrill not to worry because the modification just had to be put in the computer. The representative assured Mrs. Merrill that the modification just had to be processed and that the computer system had to catch up.

46. Based on the BANA representation, the Merrills continued to timely make their monthly permanent modification payments. They did not look at other options such a bankruptcy at that time to try and bring the loan current.

47. In April, 2013 the Merrills received a letter from BANA stating that, despite being approved and offered a Freddie Mac Modification, they were not eligible because the Merrills allegedly notified BANA that they did not wish to accept the offer.  A true and accurate copy of the letter is attached hereto as Exhibit 4.

48. The Merrills never indicated to BANA they did not want the modification.

49. The Merrills made 11 monthly payments to BANA, which BANA accepted, under the modification before receiving the April 2013 letter from BANA.

50. BANA signed the permanent modification agreement on May 7, 2013 and returned a copy of the agreement to the Merrills on or around May 8, 2013.  A true and accurate copy of the fully executed permanent loan modification agreement is attached hereto as Exhibit 5.

51. BANA continued to send the Merrills monthly billing statements alleging increasing amounts due of over $90,000 per the pre-modification loan terms.  *See* Exhibit 3.

52. The dismissal of the foreclosure with prejudice, the monthly billing statements based on the pre-modification loan terms, and the denial letter all led the Merrills to believe that BANA was not going to recognize and honor the modification and they stopped making the modification payments.

6

53. Not knowing what was going to happen with BANA and desperate to keep their home, the Merrills filed for bankruptcy on October 29, 2014 (U.S. Bankruptcy Court of Maine, Case No. 14-20855).

54. The Merrills listed BANA on their bankruptcy petition and BANA received notice of the bankruptcy filing.  Notice of their Chapter 13 Bankruptcy Case and the Meeting of Creditors along with the Notice of Recipients is attached hereto as Exhibit 6.

55. As of the date of filing, BANA was reporting inaccurate amounts due on the loan based on pre-modification terms and inaccurate late payments to the credit reporting agencies.  A true and accurate copy of a redacted excerpt of Mr. and Mrs. Merrills credit report dated October 29, 2014 is attached here as Exhibit 7.

56. The Merrills stated in their Amended Bankruptcy Plan, attached hereto with the Notice of Recipients as Exhibit 8, that they would make payments to BANA per the June 2012 loan modification.

57. Even after the Merrills filed their bankruptcy and then their Amended Plan, BANA continued to send monthly mortgage statements attempting to collect on monies not due, calculated based on the pre-modification terms of the loan.  A true and accurate copy of mortgage statements for November and December 2014; January 16, 2015; and March through September, 2015 are attached hereto as Exhibit 9. The statements alleged increasing past due escrow amounts due and loan terms different than the modified loan terms.

58. The Merrills made post-petition payments to BANA for the mortgage based on the loan modification agreement which, upon information and belief, BANA misapplied relying on the pre-modification terms of the loan.

59. On February 5, 2015, BANA, through their attorneys Shechtman, Halperin, Savage, filed a Motion to Dismiss the foreclosure action *without* prejudice, RE-11-252, the same foreclosure action that was already dismissed *with* prejudice. A true and accurate copy of the Motion to Dismiss is attached hereto as Exhibit 10.

60.   On March 9, 2015, BANA, through Shechtman, Halperin, Savage, filed a Proof of Claim in the Merrill's bankruptcy.  A true and accurate copy of the Proof of Claim with its attachments including the Note and Mortgage, Claim No. 20, is attached hereto as Exhibit 11.

61. BANA based the Proof of Claim ("Claim") on the pre-modification terms of the loan.

62. The Claim alleged $108,972.06 in pre-petition arrears due which BANA based on the original mortgage terms including a 6.75% interest rate and $341,259.08 principal balance.

63. The interest rate on the modification is just 5% and the interest bearing principal is just $206,117.21.

64. BANA reported the alleged missed monthly payments as over $2,000.00 a month in the Claim rather than the $1,474.00 per month owing under the modification.

65. BANA's Claim also included past payments from June 1, 2010 forward which BANA had capitalized into the permanent modification.

66. The alleged claim is significantly more than it would be had they calculated it under the permanent modification.  *See* Exhibits 5 and 11.

67. On April 14, 2015, BANA, through Shechtman, Halperin, Savage, filed a Motion for Relief of Judgment in the foreclosure action.  A true and accurate copy of the Motion for Relief from Judgment is attached hereto as Exhibit 12. In the Motion, BANA admits that the 2012 permanent modification was offered and accepted, attaches it as an exhibit, and even attaches a document filed in the Merrills' bankruptcy evidencing BANA's awareness and knowledge of same.

68. On April 23, 2015, undersigned counsel for the Merrills delivered to Shechtman, Halperin, Savage a letter seeking an immediate withdrawal of the Motion for Relief from Judgment due to its violation of the bankruptcy stay, 11 U.S.C. §362, and asking that all communications regarding the mortgage loan be directed to the Merrills' counsel. A true and accurate copy of the April 23, 2015 letter is attached hereto as Exhibit 13. The Motion was withdrawn by BANA's counsel on May 4, 2015.

69. Counsel for the Merrills also delivered a Suggestion of Bankruptcy with a copy of the Notice of Filing to the State Court regarding the foreclosure action RE-11-252.

70. The Merrills incurred attorneys' fees to address the Motion from Relief of Judgment.

71. On May 26, 2015 BANA filed an Objection to Confirmation of Chapter 13 Plan in the Merrills' bankruptcy matter.  BANA again claimed the Merrills owed $108,982.06 in pre-petition arrears. A true and accurate copy of the Objection is attached hereto as Exhibit 14.

72. Counsel for the Merrills timely filed a Response to the Objection on July 21, 2015 disputing the amounts alleged owed.

73. To date, BANA has not filed an amended Proof of Claim or amended Objection to Confirmation.

74. To date, BANA has continued to report inaccurate amounts due on the loan based on pre-modification terms and inaccurate late payments to the credit reporting agencies.  *See* Exhibit 15, redacted pages from Mr. and Mrs. Merrill's credit report dated September 9, 2015.

75.    BANA's failure to dismiss the foreclosure action timely, denial of the loan modification after almost a year of payments, and continuous failure to recognize and implement the permanent loan modification and cease its exhaustive efforts to collect on the pre-modification amounts alleged due even after they filed for bankruptcy caused severe distress to the Merrills.

9

76. The Merrills continually worried about where they would go with their four young children when BANA took their home. They knew they could never afford the amount BANA said they owed. They felt uncertain and insecure in where they were going to live and what they were going to do. The constant anxiety caused Mr. and Mrs. Merrill to argue continually and, after receiving the April 2013 denial letter, the relationship deteriorated to the point where Mrs. Merrill was ready to move out because of the constant tension and fighting. The two slept in separate bedrooms. Mr. Merrill blamed himself and felt helpless. He spent less and less quality time with the children because of his feelings of anxiety and depression.

77. The anxiety and worry about a place to live for their family has caused them sleeplessness, headaches, stomach issues, crying, an inability to focus with their children and co-workers, irritability and impatience, as well as muscle aches and pains from the stress.

78. Ultimately, the Merrills are distressed over their four-year old daughter who suffers from severe social anxiety. Her therapist has admitted that the social anxiety is most likely a result of the tension in the household. The tension in the household is due to BANA's conduct.

79. BANA acted knowingly, recklessly, and in bad faith. BANA offered, acknowledged and signed the permanent modification but told the Merrills it was denied and failed to implement it even after intervention by the Merrills' counsel. This failure resulted in the Merrills filing for bankruptcy and BANA filing pleadings in the bankruptcy and the foreclosure action they knew were inaccurate. In addition, BANA continues to send inaccurate monthly statements statements. *See* Exhibit 9.

80. BANA's conduct is so outrageous and egregious as to imply malice.

81. To date, BANA still has not implemented the June 1, 2012 permanent modification but did offer the Merrills a new loan modification on August 19, 2015 that would bring the loan current

under similar terms as the previous modification.   The "Loan Modification Clarity Commitment" that summarizes the terms of the loan again fails to recognize that a permanent modification had been put in place in 2012.  For example, it states the pre-modification interest rate which makes it appear that the interest rate is being lowered by 2.75% when it is only down 1% from the modification.  A true and accurate copy of the Clarity Commitment is attached hereto as Exhibit 16.

82. Based on at least *ten* other cases filed in the U.S. Bankruptcy Court, District of Maine against BANA that allege violations of the automatic stay and/or discharge injunction, (Docket Numbers: 05-02103; 06-20237; 07-02002; 07-02028; 07-02031; 08-10621; 11-02076; 13-02066; 13-02038; 14-2032) BANA has inadequate policies and procedures in place to service loans that are listed in or discharged in bankruptcy.

83. Upon information and belief and based on the allegations in at least these ten cases filed in the U.S. Bankruptcy Court, District of Maine, BANA has been engaged in a pattern and practice of seeking to collect on debts that have been listed and/or discharged in bankruptcy as a violation of the automatic stay or discharge injunction.

84. Upon information and belief and court filings nationwide, BANA has engaged in a pattern and practice of seeking to collect on debts that have been listed and/or discharged in bankruptcy in violation of the automatic stay or discharge injunction around the country.

85. Based on allegations in at least two cases filed in Maine state courts (Green Tree Servicing LLC v. Mark Bowen, Docket No. AUSBSC RE 2014-00044 and Bank of America, N.A., et al v. Jennie and Russell Kinney, Docket No. RE-13-17) BANA has engaged in a pattern and practice of failing to ensure a complete and timely implementation of permanent loan modification offers.

86. Upon information and belief and court filings around the country, BANA has engaged in a pattern and practice of failing to ensure a complete and timely implementation of permanent loan modification offers nationwide.

## V. CLAIMS

### COUNT ONE: Violation of the Bankruptcy Automatic Stay, 11 U.S.C. §362 (BANA/Freddie Mac)

87. The Plaintiffs reallege and incorporate the paragraphs above as if fully set out herein.

88. BANA had actual notice of the Merrills' bankruptcy as of October 30, 2014 and have been participating in the Merrills' bankruptcy. *See* Exhibit 6

89. BANA violated the Bankruptcy Automatic Stay, 11 USC §362, by having notice of the bankruptcy filing and willfully 1) attempting to collect on pre-petition, pre-modification loan debt per the original terms of the loan after a permanent modification changed the terms of the mortgage and the bankruptcy plan stated payments would be made per that loan modification; 2) by misapplying post-petition payments; 3) actively seeking to continue the foreclosure action on the home and against the Merrills; 4) and by reporting inaccurately to the credit reporting bureaus.

90.  BANA's conduct was unfair, coercive, harassing, willful, and knowing.

91. The Merrills felt harassed and coerced to the point that they believed BANA would eventually take their home because they could not repay the large amounts of arrears or afford the pre-modified payment amount.

92. As a result of BANA's conduct, including its actions and inactions, the Merrills suffered actual damages including but without limitation; time missed from work, travel expenses, attorneys' fees and costs, utter frustration and desperation and other emotional and mental distress as outlined above.

12

93. Further, as detailed above, BANA has engaged in a pattern and practice of trying to collect from debtors on debts listed in bankruptcy.

94. Such conduct is outrageous and egregious.

95. BANA's actions demonstrate its knowing, willful violation of 11 U.S.C. §362.

96. BANA is in violation of the Bankruptcy Automatic Stay and the Merrills are entitled to receive from the Defendants actual and compensatory damages, including costs and attorneys' fees, and punitive damages in this matter pursuant to 11 U.S.C. §362 and further relief as may be just and proper.

97. As the principal of BANA, Freddie Mac is jointly and severally liable for BANA's conduct.

## COUNT TWO: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 Et Seq. And 32 M.R.S.A. §11001 Et Seq.: Maine Fair Debt Collection Practices Act

98. The Plaintiffs reallege and incorporate all paragraphs above as if fully set out herein.

99. Within one year prior of  the filing of this suit, and ongoing for more than one year prior, by example only and without limitation, BANA violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. and the Maine Fair Debt Collection Practices Act 32 M.R.S.A. §11001 et seq. (collectively the "FDCPA") as outlined above specifically by:

  a. Falsely representing the character, amount, and legal status of the loan debt through letters dated at least July 30, 2012 to the present and through reports to the credit reporting agencies (15 U.S.C. §1692e(2); 32 M.R.S.A. §11013(2)(B));

  b. The use of false representations and deceptive means to collect on the loan debt through letters, statements and inaccurate credit reporting (15 U.S.C. §1692e(10); 32 M.R.S.A. §11013(2));

  c. Engaging in conduct, the natural consequence of which was to harass, oppress

or abuse the Merrills in connection with the collection of the mortgage debt by delivering notices seeking payment of monies not owed, misapplying payments, and reporting inaccurate amounts owed to the credit reporting agencies. (15 USC §1692d ; 32 M.R.S.A. §11013(1));

d.   Communicating with the Merrills in connection with the collection of the mortgage debt when BANA knew that the consumers were represented by an attorney with respect to that debt and had knowledge of that attorney's name and address. (15 USC §1692c(2); 32 M.R.S.A. §11012(1)(B));

e.   Using unfair or unconscionable means to collect or attempt to collect on the mortgage debt through letters, statements, misapplication of payments and inaccurate credit reporting. (15 USC §1692f; 32 M.R.S.A. §11013(3)).

100.   As a result of the conduct, actions and inactions of BANA, the Merrills suffered actual damages including, without limitation, missed work, travel costs, harassment, coercion, fear and anxiety and other emotional and mental distress as detailed above.

101.   The Merrills are entitled to recover actual damages, including emotional distress damages, statutory damages, costs and attorney's fees from BANA and such further relief as may be just and proper.

### COUNT THREE: Illegal, Fraudulent or Unconscionable Conduct In Attempted Collection Of Debts In Violation of the Maine Consumer Credit Code 9-A M.R.S. §§9-403(F)&(G) (BANA/ Freddie Mac)

102.   Plaintiffs repeat and reallege and incorporate by reference all paragraphs above.

103.   In an effort to collect the Merrills' mortgage debt BANA disclosed information concerning the mortgage loan to national credit reporting agencies knowing that a permanent loan modification was in effect and the debt was part of a bankruptcy.

104.    BANA knew that the debt was in dispute yet it did not disclose that fact and then failed

to take any action to correct the inaccurate information after receiving notice of the improper

disclosure.

105.    BANA thereby violated the Maine Consumer Credit Code (MCCC), 9-A M.R.S. §§9-

403(F).

106.    BANA also attempted to collect on the mortgage debt after such activity had been barred

by a final order of a court of the United States, the Consent Judgment, in violation of 9-A

M.R.S. §§9-403(G).

107.    Per the Consent Judgment, BANA was obligated to "cease all collection efforts while the

borrower (i) is making timely payments under a trial loan modification." BANA 2012 Consent

Judgment at Exhibit A par. (D)(4) found at

https://d9klfgibkcquc.cloudfront.net/Consent_Judgment_BoA-4-11-12.pdf

108.    As stated above, BANA continued to send monthly statements to the debtors seeking the

pre-modification amounts due during the trial plan and modification periods. *See* Exhbit 3.

109.    Such violations constitute a violation of the Maine Unfair Trade Practices Act pursuant

to 9-A M.R.S. §9-408.

110.    The Plaintiffs demand judgment for actual damages, including emotional damages,

statutory damages, punitive damages, their attorneys' fees and costs, for pre-judgment and post-

judgment interest at the legal rate, and such other relief the Court does deem just, equitable and

proper.

111.    As the principal of BANA, Freddie Mac is jointly and severally liable for BANA's

conduct.

<u>**COUNT FOUR**</u>**: Negligence**
**(BANA/ Freddie Mac)**

112.    The Plaintiffs reallege each and every preceding allegation set forth in the above
paragraphs as if fully set forth herein.

113.    BANA breached its duty of care to Mr. and Mrs. Merrill and caused them harm
throughout the time they serviced the loan.

114.    BANA owed the Merrills a duty of care.  The relationship established between the
Merrills and BANA was more than a typical arms-length servicer/borrower relationship or
typical bank/borrower relationship. It was a long-term, exclusive relationship that began in or
around September 2010 when the Merrills relied on BANA's representations and advice
including that they qualified for a loan modification and, if they entered into the loan
modification, their loan would be brought current thus avoiding foreclosure of the home.

115.    BANA solicited the Merrills to submit confidential financial information for their review
and promised to review the Merrills for options to avoid foreclosure.

116.    BANA solicited the Merrills to travel to and attend a seminar and then solicited
additional confidential financial information from the Merrills.

117.    This loan modification application, offer, representations, and advice from BANA was a
process and not a single transaction which gives rise to a special relationship between BANA
and the Merrills.

118.    The relationship with BANA included the solicitations, and provision of, confidential
financial information including bank statements, paystubs, tax returns, household expenses,
living arrangements, life circumstances giving rise to default, and life efforts to stabilize and
income. It also included communications and advice from BANA to the Merrills with
instructions for requirements, next steps, and actions the Merrills relied on to save their home

16

from foreclosure. All the while, the Merrills forwent other sources for modification or options to avoid foreclosure such as bankruptcy.

119.    The loan modification process required the Merrills to engage in a process of reliance, trust, and dependence on BANA.

120.    As the Merrills became more and more desperate to put the mortgage debt behind them, they became more and more dependent on BANA to provide a solution.  As described above, they experienced severe emotional distress about losing their home which resulted a diminished emotional capacity when dealing with BANA.  The Merrills only realistic option for relief, as the loan grew further and further behind per BANA's statements, was for BANA to offer and implement the permanent modification.  They put all their faith in BANA to provide a solution and continued to provide information requested by BANA and timely monthly payments on the modification.

121.    The Merrills were not represented by counsel throughout the state foreclosure proceedings and did not retain counsel until they filed their bankruptcy. There was a great disparity of power and influence between BANA and the Merrills.

122.    BANA's misrepresentations and continued inaccurate communications with the Merrills regarding the mortgage debt is not the type of conduct common in the usual servicer/borrower relationship.

123.    BANA went beyond the typical role of servicer and, as such, BANA developed a special, confidential relationship with the Merrills.

124.    BANA assured the Merrills that if they provided the information required and complied with the Trial Payment Plan, they would honor the Plan and extend and implement a permanent loan modification.

125.    The Merrills believed BANA's reassurances and trusted BANA to accept and process the loan modification and their payments correctly when they entered into the modification.

126.    The Merrills also trusted BANA when it sent them a notice representing that the modification had been denied.   The Merrills placed their trust in BANA and relied on the denial along with the monthly statements when they stopped making payments, believing they could not pay what BANA alleged was owed.

127.    The duty claimed is a duty to manage the servicing of the Merrills' loan in a manner that would not cause them to suffer loss or injury by reason of their negligence.

128.    It is also a duty owed to the Merrills to not make material misrepresentations about the status of their loan modification, their loan, and the foreclosure.

129.    BANA breached this duty by at least:

    a.    misrepresenting to the Merrills they were pre-approved for a loan modification that would cure the default on their loan and then within two weeks thereafter initiated foreclosure proceedings,

    b.    failing to dismiss the foreclosure action in a timely manner and prolonging the foreclosure after offering and accepting the permanent loan modification,

    c.    failing to honor and implement timely the terms of the permanent modification,

    d.    failing to attend Court proceedings during the foreclosure,

    e.    reassuring and misrepresenting to the Merrills that that permanent modification would be implemented, the loan brought current, and the monthly statements would reflect the new terms as soon as the computer system was caught up,

    f.    misrepresenting amounts due and owing on the loan in each and every monthly statement from July 2012 to the present,

g.  misrepresenting a year after the Merrills made payments on the permanent modification that the modification was denied,

h.  attempting to reinstitute the state foreclosure proceedings after the Merrills filed for bankruptcy,

i.  misapplying payments made under the modification, and

j.  misreporting amounts due and late payments to the credit reporting agencies.

130.   As further evidence of their breach, BANA violated the Consent Judgment by, but not limited to: a) failing to maintain adequate staffing and systems for tracking borrower documents and information (Consent Judgment Ex. A(H)(1)); b) making inaccurate payment delinquency reports to credit reporting agencies when the borrower was making timely reduced payments pursuant to a trial or other loan modification agreement (Consent Judgment Ex. A(H)(6)); 3); c) failing to provide the Merrills with a copy of the fully executed loan modification within 45 days of receipt of the executed copy from the Merrills (Consent Judgment Ex. A(H)(7)); and d) continuing on a dual track of evaluating for a loan modification and filing a foreclosure complaint (Consent Judgment Ex. A(B)) found at

https://d9klfgibkcquc.cloudfront.net/Consent_Judgment_BoA-4-11-12.pdf

131.   It is foreseeable that a borrower might be harmed by such inaccurate or untimely communication about a modification, default, or foreclosure.

132.   The Merrills did incur severe physical and emotional distress as a result of BANA's conduct as outlined above in addition to the financial stress in having to miss work, pay travel expenses, file bankruptcy, and hire an attorney to defend against BANA's conduct.

133.   All the while, BANA knew or should have known that the debt had been brought current and the permanent modification terms were in effect on the mortgage.

134.    But, BANA did not and does not have proper procedures in place to prevent this misconduct.

135.    Instead, BANA continues to harass the Merrills and misrepresent amounts due that are not owed and not due to BANA.

136.    BANA knew or should have known that such distress was substantially certain to occur by their continued efforts and harassment to try and collect on a debt that was not owed by the Merrills, placing the Merrills' home in jeopardy.

137.    Such extreme and outrageous misconduct was done knowingly, willfully, wantonly, and with implied or actual malice.

138.    BANA's past and continued actions caused and continue to cause the Merrills physical, emotional, and financial distress as outlined above.

139.    BANA is liable to the Plaintiffs for actual damages, emotional distress and punitive damages and for such other and further relief as may be just and proper.

140.    As the principal of BANA, Freddie Mac is jointly and severally liable for BANA's conduct.

### <u>COUNT FIVE</u>: Intentional and/or Negligent Infliction of Emotional Distress
### (BANA/ Freddie Mac)

141.    Plaintiffs repeat and reallege and incorporate by reference all paragraphs above.

142.    As detailed in Count Four, BANA created a special relationship with the Merrills during the more than four years they serviced the loan.  BANA owed the Merrills a duty to manage the servicing of the Merrills' loan in a manner that would not cause the Merrills to suffer loss or injury by reason of their negligence and to not misrepresent material terms of the modification, loan, and foreclosure.

143.    BANA engaged, and continues to engage in reckless, extreme and outrageous conduct by continuing to attempt to collect on a debt that has been satisfied in full and misrepresenting outrageous amounts due by the Merrills, after at least two demand notices from counsel about the misconduct.

144.    BANA intentionally and/or recklessly inflicted severe emotional distress on the Merrills.

145.    BANA should have known that such distress was substantially certain to occur by their continued efforts and harassment for almost three years to try and collect on a debt that was not owed by the Merrills.

146.    BANA's prior and continued misconduct is so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

147.    Such misconduct was done knowingly, willfully, wantonly, and with implied or actual malice.

148.    As detailed above, BANA's past and continued actions caused and continue to cause plaintiffs emotional distress so severe that no reasonable person could be expected to endure it as outlined above.

149.    The Defendants are liable to the Plaintiffs for damages for emotional distress and punitive damages and for such other and further relief as may be just and proper.

150.    As the principal of BANA, Freddie Mac is jointly and severally liable for BANA's conduct.

**COUNT SIX: Fraud**
**(BANA/ Freddie Mac)**

151.    The Plaintiffs incorporate all previous paragraphs as if stated herein.

152.    BANA engaged in fraud against the Plaintiffs.

153.    BANA made false representations to Mr. and Mrs. Merrill including but not limited to a) representing that the loan modification agreement was being processed and would soon be implemented, b) stating they owed each month inflated payments based on the pre-modification terms of the loan, and c) that the Merrills were no longer eligible for the loan modification they accepted and paid on for almost a year because the Merrills had allegedly notified BANA they did not want the modification.

154.    BANA's false representations were of material facts related to the Merrills' loan.

155.    BANA made the false representations knowing that a) a permanent loan modification was in effect bringing the loan current and reducing the monthly payments due on the loan b) BANA received and signed the loan modification, and c) the Merrills never notified BANA they did not want to accept the modification and in fact, had been paying on it for almost a year.

156.    BANA made the false representations to the Merrills to try and collect more money on the loan.

157.    The Merrills justifiably relied on BANA's representations when they made nearly a year of modified payments.

158.    The Merrills then justifiably relied on BANA's representations and stopped making the modified payments after they received the letter stating they were denied a loan modification and continued to get monthly statements showing the pre-modified amounts due.

159.    The Merrills suffered from BANA's misrepresentation. They believed they had no options except to file bankruptcy to save the home as the arrears grew larger and larger and harm to their credit worsened rather than improved.

160.    The Merrills also suffered emotional damage by BANA's misconduct as outlined in detail above.

161.    Such conduct by BANA was calculated to benefit BANA financially.

162.    BANA's conduct was deliberate, knowing, intentional, and so outrageous and egregious as to constitute malice or at least to imply malice.

163.    As such, the Plaintiffs are entitled to actual, compensatory, and punitive damages and to any other relief this Court finds just and appropriate.

164.    As the principal of BANA, Freddie Mac is jointly and severally liable for BANA's conduct.

<u>**COUNT SEVEN**</u>**: Negligent Misrepresentation**
**(BANA/ Freddie Mac)**

165.    The Plaintiffs incorporate all previous paragraphs as if stated herein.

166.    In the course of BANA's business and in its transactions in which it had a pecuniary interest, BANA's agents supplied false information for the guidance of the Merrills in their transactions with BANA.

167.     BANA had a pecuniary interest in the course of their business of servicing the Merrill's loan including in collecting money on the loan whether through payments or sale of the property and being paid by FNMA to service the loan.

168.    In the course of its dealings with the Merrills, BANA provided representations and guidance to the Merrills, and the Merrills trusted them as outlined above.

169.    BANA had a duty to exercise reasonable care or competence in communicating information to the Merrills regarding the loan and breached this duty by providing false information regarding amounts due and the status of the modification.

170.    BANA advised the Merrills that entering into the modification would bring the loan current, that the loan modification was being processed and implemented and would bring the

loan current and provide them with a lower, more affordable payment, that the modification was denied and that the Merrills owed the pre-modification amounts due on the loan.

171.    BANA knew these representations were false as they had signed the modification themselves, but never bothered to implement its terms.

172.    The Merrills justifiably relied to their detriment on BANA's guidance when a) they entered into the modification, and b) then stopped payments when they were advised by BANA the modification was denied.  The Merrills could not afford the previous payment or the amounts alleged due and the arrears continued to grow until their only realistic option was filing for bankruptcy to save the home.  However, the alleged arrears, incorrectly based on the pre-modification amounts as reflected in BANA's proof of claim (Exhibit 11), are now too high to repay in the five-year bankruptcy period.

173.    BANA engaged in negligent misrepresentation for the conduct described above. As such, they are liable to the Plaintiffs for actual pecuniary loss and compensatory and punitive damages as well as any other relief the Court deems just and appropriate.

174.    As the principal of BANA, Freddie Mac is jointly and severally liable for BANA's conduct.

## DEMAND FOR JURY TRIAL

The Plaintiffs Sara and Steven Merrill request a trial by jury on all counts.

Dated at Biddeford, Maine, this   15th day of September, 2015.


MOLLEUR LAW OFFICE

By:  /s/ Andrea Bopp Stark
Andrea Bopp Stark, Esq.
Counsel for Plaintiffs Steven and Sara Merrill
419 Alfred Street

Biddeford, Maine  04005-3747
(207) 283-3777
(207) 284-4558 Fax
andrea@molleurlaw.com
chet@molleurlaw.com

TERRY GARMEY AND ASSOCIATES

Gary Goldberg, Esq.
482 Congress Street, Suite 402
Portland, ME  04101-3424
(207)899-4644
ggoldberg@garmeylaw.com